**NOS. 22-50161, 22-50162**
_____

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

____

____

**UNITED STATES OF AMERICA,**

Plaintiff - Appellee,

v.

**ELVIS EDGARDO MOLINA,**

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Central District of California
Honorable Percy Anderson, District Judge
_____

**APPELLANT'S OPENING BRIEF**

____

____

MARISA L. D. CONROY
P.O. BOX 232726
ENCINITAS, CA 92023
(858) 449-8375
Attorney for Defendant-Appellant
Elvis Edgardo Molina

## **TABLE OF CONTENTS**

AUTHORITIES CITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Basis for Subject Matter Jurisdiction in District Court . . . . . . . . 2

      B.    Basis for Jurisdiction in the Court of Appeals . . . . . . . . . . . . . . 2

      C.    The Judgment is Appealable . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      D.    The Notice of Appeal was Timely . . . . . . . . . . . . . . . . . . . . . . . . 3

      E.    Bail Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  STATUTORY PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Proceedings Before the District Court . . . . . . . . . . . . . . . . . . . . . 4

      B.    The Combined Sentencing Hearings . . . . . . . . . . . . . . . . . . . . . . . 6

VI.  SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VII.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.  The district court violated Fed. R. Crim. P. 32 and Mr. Molina's
        right to due process when it relied on materials outside the
        record and failed to disclose the materials prior to sentencing 14

        1.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        2.  The district court's reliance on numerous undisclosed
            statistics regarding mass shootings and gun violence
            failed to comply with Rule 32 and Mr. Molina's due process
            right to a full, focused, and adversarial hearing. . . . . . . . 14

    B.  The district court erred and imposed a procedurally
        unreasonable sentence when it doubled Mr. Molina's sentence
        by varying 30 months above the applicable Guidelines range . 26

        1.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        2.  The district court's sentence was procedurally
            unreasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    C.  The district court's sentence was substantively unreasonable 31

    D.  The case should be reassigned for resentencing . . . . . . . . . . . 35

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Berman v. United States*,
    302 U.S. 211 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Burns v. United States*,
    501 U.S. 129 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Farrow v. United States*,
    580 F.2d 1339 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Gall v. United States*,
    552 U.S. 38 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 32

*In re Ellis*,
    356 F.3d 1198 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Irizzary v. United States*,
    553 U.S. 708 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21, 25

*Roberts v. United States*,
    445 U.S. 552 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Townsend v. Burke*,
    334 U.S. 736 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Addonizio*,
    442 U.S. 178 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Alvarado-Martinez*,
    556 F.3d 732 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Ameline*,
    409 F.3d 1073 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Autery*,
    555 F.3d 864 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Baldrich*,
    471 F.3d 1110 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

*United States v. Buesing*,
    615 F.3d 971 (8th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*United States v. Brady*,
    895 F.2d 538 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Carty*,
    520 F.3d 984 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Coppenger*,
    775 F.3d 799 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23
*United States v. Fleming,*
    894 F.3d 764 (6th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
*United States v. Gomez-Gomez*,
    788 Fed.App'x 469 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 26
*United States v. Gray*,
    905 F.3d 1145 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 26
*United States v. Ibarra*,
    737 F.2d 825 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
*United States v. Jenkins,*
    854 F.3d 181 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
*United States v. Musgrave*,
    647 Fed.Appx. 529 (6th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
*United States v. Nappi*,
    243 F.3d 758 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16
*United States v. Paul*,
    561 F.3d 970 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
*United States v. Ressam*,
    593 F.3d 1095 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 31
*United States v. Saeteurn*,
    504 F.3d 1175 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
*United States v. Sahakian*,
    965 F.2d 740 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
*United States v. Singh*,
    877 F.3d 107 (2d. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
*United States v. Stock*,
    685 F.3d 621 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
*United States v. Tucker*,
    404 U.S. 443 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
*United States v. Valencia-Barragan*,
    608 F.3d 1103 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
*United States v. Vanderwerfhorst*,
    576 F.3d 929 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
*United States v. Warr*,
    530 F.3d 1152 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 26

## STATUTES

18 U.S.C. § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4
18 U.S.C. § 924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
28 U.S.C. § 1294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
28 U.S.C. § 2106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
28 U.S.C. § 2461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## SENTENCING GUIDELINES

U.S.S.G. § 3E1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
U.S.S.G. § 5K2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## RULES

Fed. R. App. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Fed. R. Crim. P. 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Fed. R. Crim. P. 32.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Ninth Circuit Rule 28-2.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## OTHER SOURCES

https://projects.voanews.com/mass-shootings/data.html . . . . . . . . . . . . . . 30
2021 Sourcebook of Federal Sentencing Statistics available at:
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annu
al-reports-and-sourcebooks/2021/Table28 . . . . . . . . . . . . . . . . . . . . . . . . . . 34

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | U.S.C.A. Nos. 22-50161, 22-50162 |
| | ) | U.S.D.C. No. 13cr00826-PA |
| | ) | 21cr00545-PA |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | APPELLANT'S OPENING BRIEF |
| | ) | BRIEF |
| ELVIS EDGARDO MOLINA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

# I.
# <u>INTRODUCTION</u>

At sentencing, the district court doubled Mr. Molina's sentence by imposing a 30 month upward variance without any prior notice. The court based its decision on undisclosed statistics regarding mass shootings, homicides, and ghost guns. Mr. Molina was deprived of the opportunity to challenge the accuracy or relevance of the statistics or the undisclosed sources of the statistics. Here, the parties had concluded their arguments and the district court first discussed the statistics while it was in the process of imposing its sentence. The manner in which the sentencing hearing was conducted deprived Mr. Molina of his constitutional right to due

process of law and a fair proceeding.  In addition to being unduly punitive,

the resultant sentence creates an unwarranted disparity among similarly-

situated defendants across the United States.

## II.
## STATEMENT OF JURISDICTION

**A.    Basis for Subject Matter Jurisdiction in the District Court**.

Mr. Molina appeals his conviction from the United States District

Court for the Central District of California before the Honorable Percy

Anderson.  Mr. Molina pleaded guilty to a violation of 18 U.S.C. § 922(d)(1),

Felon in Possession of a Firearm and Ammunition.  Mr. Molina also appeals

the sentence imposed upon revocation of his supervised release in Case No.

13cr00826-PA.  The District Court had jurisdiction under 18 U.S.C. § 3231.

**B.    Basis for Jurisdiction in the Court of Appeals.**

This Court has jurisdiction over appeals from final judgments under

28 U.S.C. § 1294(1).

**C.    The Judgment is Appealable.**

A judgment of conviction in a federal criminal case is a final order

subject to appeal under 28 U.S.C. § 1291.

**D.    The Notice of Appeal was Timely.**

The Judgment in Case No. 21cr00545-PA was filed on July 11, 2022.

[2-CR-37; ER-10.][1]  The Judgment in Case No. 13cr00826-PA was filed on

July 12, 2022. [1-CR-164; ER-2.]  Mr. Molina timely filed a Notice of Appeal in

both cases on July 21, 2022.  [1-CR-165, 2-CR-40; ER-90, 91.]; Fed. R. App. P.

4(b).  On July 22, 2022, this Court sua sponte consolidated the appeals.  Mr.

Molina appeals from a criminal judgment, a final order appealable under 28

U.S.C. § 1291.  *Berman v. United States*, 302 U.S. 211, 212-13 (1937).

**E.    Bail Status.**

Mr. Molina is serving a 72-month sentence in the custody of the

Federal Bureau of Prisons.  He is currently housed at Lewisburg USP in

Lewisburg, Pennsylvania with a projected release date of October 1, 2026.

### III.
### STATUTORY PROVISIONS

Pursuant to Ninth Circuit Rule 28-2.7, copies of pertinent statutes

appear in the attached addendum.

---

[1]"CR" refers to the Clerk's Record in Case No. 13cr00826-PA, "2-CR" refers to the Clerk's Record in Case No. 21cr00545-PA.  "ER" refers to the Excerpts of Record.

## IV.
## <u>ISSUES PRESENTED FOR REVIEW</u>

**A.**     Whether the district court violated Fed. R. Crim. P. 32 and Mr. Molina's right to due process when it relied on undisclosed statistics from unknown sources of questionable validity to justify an unprecedented 30-month upward variance from the calculated Guidelines range which ultimately doubled Mr. Molina's sentence?

B.     Whether the district court erred and imposed a procedurally unreasonable sentence when it doubled Mr. Molina's sentence by varying 30 months above the applicable Guidelines range?

C.     Whether the district court erred and imposed a substantively unreasonable and disproportionate sentence by failing to adequately consider all of the factors set forth in 18 U.S.C. § 3553(a) and instead unduly emphasized the need to protect the public based on the undisclosed statistics regarding mass shootings, homicides, and ghost guns?

D.     Whether the case should be reassigned to a different judge upon remand based upon the district court judge's reliance on undisclosed and irrelevant information in imposing Mr. Molina's sentence?

## V.
## <u>STATEMENT OF THE CASE</u>

**A.     Proceedings Before the District Court.**

**<u>Case No. 21cr00545-PA</u>**

On November 30, 2021, the government charged Mr. Molina in a one count indictment alleging a violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm and Ammunition 18 U.S.C. § 924(d)(1) and 28

-4-

U.S.C. § 2461(c), Criminal Forfeiture. [2-CR-1; ER-85.] On February 14, 2022, Mr. Molina entered a plea of guilty pursuant to a plea agreement. [2-CR-18, 21; ER-63.]

**Supervised release revocation in 13cr00826-PA**

As a result of the pending federal case, probation filed a petition for revocation of supervised release in Case No. 13cr00826-PA.[2] The petition alleged Mr. Molina tested positive for marijuana, failed to report for drug testing on multiple occasions, committed the pending federal offense, failed to report the law enforcement contact to his probation officer, and failed to notify the probation officer of a change of address. [ER-52-55, PSR 11-12.] On March 22, 2022, Mr. Molina admitted allegations one through three and seven through nine. [1-CR-157 ; ER-52-55.] He also admitted to corrected

---

[2]In Case No. 13cr00826-PA, the government charged Mr. Molina and a co-defendant in an indictment with violating two counts of 21 U.S.C. § 841, Distribution of Methamphetamine and 18 U.S.C. § 2, Aiding and Abetting. [1-CR -1; ER-83.] On September 2, 2014, Mr. Molina entered a plea of guilty to one count of 21 U.S.C. § 841 pursuant to a plea agreement. [1-CR-61, 67, 68.] On November 17, 2014, the court sentenced Mr. Molina to 70 months custody, three years supervised release, and a $100 special assessment. [1-CR-85, 86; ER-5.] On November 25, 2019, the court held a supervised release revocation hearing and found Mr. Molina in violation. [1-CR-125; ER-4.] The court revoked supervised release and continued Mr. Molina on the same terms and conditions with the added requirement of 90 days home detention. [1-CR-125; ER-4.]

allegations four through six. [1-CR-157; ER-52-55.] The government agreed to dismiss allegation 10. [ER-46]

## B. The Combined Sentencing Hearings.

Prior to sentencing, Mr. Molina filed a sentencing memorandum and requested the court impose a sentence of 27 months with any sentence imposed on the revocation to run concurrent. [2-CR-31.] Mr. Molina highlighted his efforts upon his release in 2019: he lived with family members; worked long hours; and invested in his carpentry business. [2-CR-31.] The government and probation were in agreement and recommended a sentence of 30 months custody, with any revocation sentence to be served concurrently. [2-CR-22, 29.] All parties were in agreement that the supervised release proceeding involved primarily the same conduct at issue in the pending case. [1-CR-24.] As part of the plea agreement, the government agreed to recommend that the sentences in both matters run concurrent. [2-CR-18, 29; ER-67.]

The district court began the sentencing hearing by informing the parties of the proposed conditions of supervised release. [ER-19-23.] Mr. Molina did not object to any of these conditions. [ER-23.] The parties did

not have any factual objections to the PSR.  [ER-23-34.]  Probation
calculated:

| | |
|---|---|
| U.S.S.G. § 5K2.1(a)(4)(A) (Base Offense Level) | 20 |
| U.S.S.G. § 3E1.1   (Acceptance of Responsibility) | -3 |
| Total Offense Level | 17 |
| Criminal History Category | III |
| Resulting Guidelines Range | 30-37 Months |

(PSR 3, 5-6.)  The parties were in agreement as to the Guidelines
calculations.  [ER-24.]

Defense counsel then addressed the court regarding the pertinent 18
U.S.C. § 3553(a) factors and requested a sentence of 27 months.  [2-CR-31;
ER-24.]  Defense counsel stated that the conduct was an outlier for Mr.
Molina as he had substantially complied with the terms of his supervised
release, maintained consistent employment, and he had considerable family
and community support.  [ER-24-25.]

The government recommended a sentence of 30 months based on Mr.
Molina's prior criminal history and the supervised release violation.  [ER-
26.]  During his allocution, Mr. Molina expressed his remorse and desire to

-7-

shift his life in a different direction. [ER-28.] He shared with the court that he had developed healthy relationships with friends and family. [ER-28.] He was focused on improving himself, his life, and rebuilding his relationship with his probation officer. [ER-28.]

The district court calculated the applicable Guidelines range, adopted the calculations in the PSR, and found a total offense level of 17, a criminal history category of III, and a Guidelines range of 30-37 months. [ER-29.] The court then turned to its consideration of the 3553(a) factors. In doing so the court noted the Guidelines had accounted for the nature of the offense, Mr. Molina's criminal history, and his acceptance of responsibility. [ER-30.] The court then stated that the Guidelines had not accounted for the defendant's extensive substance abuse history, his many drug and alcohol convictions that did not garner any criminal history points, and his persistent pattern of violating probation and supervised release. [ER-30.]

The court proceeded to give a very lengthy statement regarding "gun related violence, drive by shootings, mass shootings, car jackings, home invasion, and loss of innocent life." [ER-30.] The court emphasized that we all know someone who has been adversely affected by gun violence and that

it threatens the fundamental right to human life. [ER-31.] The court noted that people are forced to live as prisoners in their homes for fear of gun violence and that children are unable to walk in their neighborhood. [ER-31.] The court then reviewed a number of statistics regarding mass shootings:

1.    There have been more than 300 mass shootings so far in 2022. [ER-31.]

2.    The July 4th Highland Park shooting left six people dead and dozens injured. This was one of 14 mass shootings that weekend. [ER-31.]

3.    There have been over 100 mass shootings since the rampage at a Texas elementary school that left 19 children and two teachers dead. [ER-31.]

4.    Mass shootings where four or more people, not including the shooter, are injured or killed, have averaged more than one per day this year. [ER-32.]

5.    Not a single week in 2022 has passed without at least four mass shootings. [ER-32.]

6.    More than 99% of gun deaths in the U.S. are from shootings other than mass shootings. [ER-32.]

7.    These shootings are often committed by someone who is legally prohibited from possessing a firearm and perpetrated by someone who's displayed prior warning signs, intermingled with acts of domestic violence. [ER-32.]

8.     Illegal possession of guns like the one in this case are part of the epidemic.  [ER-32.]

9.     The Los Angeles police department has linked illegal guns to 24 killings since January.  [ER-32.]

10.    In 2020, California accounted for 65 percent of all ghost guns seized by the Bureau of Alcohol, Tobacco, and Firearms.  [ER-32-33.]

11.    When people are afraid of gun related violence, this can have a negative impact on people's right to access schools and healthcare facilities.  [ER-33.]

The court noted that most importantly the sentence imposed must protect the public.  [ER-33.]  The court concluded the Guidelines were insufficient to meet the statutory goals of sentencing and imposed an upward variance of 30 months, effectively doubling Mr. Molina's sentence to 60 months.  [ER-34-36.]  The court also imposed a $100 special assessment, followed by three years supervised release.  [ER-35-36.]

The district court then proceeded to sentencing on the supervised matter.  The court revoked supervised release and sentenced Mr. Molina to 18 months custody, 12 of which were to run consecutive to the 60 month sentence imposed in Case No. 21cr00545-PA, for a total sentence of 72 months.  [1-CR-163, 164; ER-39.]  The court imposed an additional 24

months supervised release to run concurrent to the supervised release term imposed in 21cr00545-PA.  [1-CR-163, 164; ER-39.]

On July 21, 2022, Mr. Molina filed a notice of appeal in each case.  [1-CR-165, 2-CR-40; ER-89, 90.]

## VI.
## SUMMARY OF ARGUMENT

At the outset of the sentencing hearing, the district court made no mention of any intention to vary or depart from the Guidelines calculations set forth in the PSR.  To the contrary, the court adopted the Guidelines computation contained within the PSR and expressly concluded that the applicable Guidelines range was 30-37 months.  Consequently, Mr. Molina requested a sentence of 27 months and the government and probation recommended a sentence of 30 months.

After all parties concluded their respective arguments, the district court conducted an analysis of the facts and circumstances of the case as well as its assessment of the factors set forth in 18 U.S.C. § 3553(a).  The court proceeded to list numerous statistics regarding mass shootings, gun deaths, and ghost guns and the epidemic of gun violence and its impact on our country.  Based upon the need to protect the public, the court imposed

-11-

a 30 month upward variance from the calculated Guidelines range, ultimately doubling Mr. Molina's sentence.

This Court has interpreted Rule 32[3] to "require[] that all facts relevant to the defendant's sentence be provided to the defendant for adversarial testing . . . ." *United States v. Baldrich*, 471 F.3d 1110, 1114 (9th Cir. 2006). Here, the district court relied upon numerous undisclosed statistics from unknown sources to justify a sentence that constituted a 100% increase from the recommended Guidelines range. Irrespective of the propriety of these considerations, the district court employed a calculated effort to deprive Mr. Molina of his constitutional right to due process of law and to receive a fair sentencing hearing.

Mr. Molina received no advance notice the court was considering an upward variance from the calculated Guidelines range or an opportunity to review the basis for that decision (*e.g.* numerous statistics from undisclosed sources, etc.). By waiting until the parties had finished their respective arguments before discussing the numerous undisclosed statistics, Mr.

---

[3]Rule 32.1 is also applicable to this case in that it imposes the same requirement in supervised release revocation proceedings.

Molina was deprived of any reasonable or meaningful opportunity to address a significant basis for the court's sentencing decision.

Additionally, the district court imposed an unnecessarily punitive sentence in this case without adequate justification. The court relied upon undisclosed statistics from unknown sources that were unilaterally selected to support its own agenda. The resultant sentence is substantially disparate to the sentences imposed upon similarly-situated defendants throughout the country. More troubling, however, is the means by which the court sought to accomplish this objective – namely, by ensuring that Mr. Molina was prohibited from reasonably addressing the court's basis for imposing a 30 month upward variance from the properly calculated Guidelines range. Accordingly, this Court should vacate, remand, and reassign to a different judge for resentencing.

## VII.
## ARGUMENT

**A.    The district court violated Fed. R. Crim. P. 32 and Mr. Molina's right to due process when it relied on materials outside the record and failed to disclose the materials prior to sentencing.**

### 1.    Standard of Review.

This Court "review[s] *de novo* a district court's compliance with Rule 32 of the Federal Rules of Criminal Procedure." *Baldrich*, 471 F.3d at 1112.

### 2.    The district court's reliance on numerous undisclosed statistics regarding mass shootings and gun violence failed to comply with Rule 32 and Mr. Molina's due process right to a full, focused, and adversarial hearing.

"Federal Rule of Criminal Procedure 32, which governs sentencing procedures in the federal courts, emanates from Congress' concern for protecting a defendant's due process rights in the sentencing process." *United States v. Nappi*, 243 F.3d 758, 763 (3d Cir. 2001). "[T]o safeguard this right, Rule 32 contains specific requirements that ensure that the defendant is sentenced based on accurate information." *Nappi*, 243 F.3d at 763. In particular, Rule 32(i)(1)(C) requires that the district court provide the parties the opportunity "to comment on the probation officer's

-14-

determination [in the presentence report] and other matters related to an appropriate sentence." Fed. R. Crim. P. 32(i)(1)(C). The Supreme Court has explained that the "opportunity to comment" language in Rule 32(i)(1)(C) "provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence." *Burns v. United States*, 501 U.S. 129, 134 (1991).

This Court, in turn, has interpreted Rule 32 to "require[] that all facts relevant to the defendant's sentence be provided to the defendant for adversarial testing . . . ." *Baldrich*, 471 F.3d at 1114; *see also United States v. Gomez-Gomez*, 788 Fed.App'x 469, 471 (9th Cir. 2019) (vacating sentence and remanding for re-sentencing because the district court relied on a sentencing transcript from defendant's prior conviction without providing a copy to the parties in advance of sentencing).

In short, a district court violates Rule 32 when it relies on "factual information that ha[s] not been disclosed to [the defendant] and to which [the defendant] had no opportunity to respond before sentence was imposed." *United States v. Gray*, 905 F.3d 1145, 1148 (9th Cir. 2018) (per curiam); *see also United States v. Warr*, 530 F.3d 1152, 1162-63 (9th Cir.

-15-

2008) (finding Rule 32(i)(1)(c) error where the district court relied on a

Bureau of Prisons study but did not "notif[y] [the defendant] of it before the

sentencing hearing."). In other words, when "counsel [is] faced with having

to review and address the contents of an additional document on

which the Court intends to rely at sentencing, a meaningful opportunity

to comment requires the Court, in accordance with Rule 32[(i)(1)(C)], to

provide a copy of the document to counsel for the defendant and the

government with sufficient time prior to the sentencing hearing to afford

them with a meaningful opportunity to comment on it at sentencing and,

depending on the document, prepare a response or contest it." *Nappi*, 243

F.3d at 764.

The United States Supreme Court has recognized the necessity of

affording defendants advance notice of a district court's intention to impose

an upward adjustment from a properly calculated Guideline range:

> [s]ound practice dictates that judges in all cases should make
> sure that the information provided to the parties in advance of the
> hearing, and in the hearing itself, has given them an adequate
> opportunity to confront and debate the relevant issues. We
> recognize that *there will be some cases* in which the factual basis
> for a particular sentence will come as a surprise to a defendant or
> the Government.

*Irizzary v. United States*, 553 U.S. 708, 715 (2008) (emphasis added).

Although courts have traditionally limited *Irizzary's* notice requirements to

instances involving upward departures, due process necessitates that a

defendant receive an adequate opportunity to prepare for and contest

extraneous information that a district court intends to consider as a basis

for an upward variance. In fact, *Irizzary* "left open the possibility of relief

when a party demonstrates that the facts or issues on which the district

court relied to impose a variance came as a surprise and that his or her

presentation to the court was prejudiced by the surprise." *Irizarry*, 553

U.S. at 715-716.

A recent case from the Sixth Circuit Court of Appeals held that while

*Irizzary* notice requirements do not *per se* apply to upward variances, Rule

32(i)(1)(B) requires sentencing courts to employ a procedure that affords

the defendant a reasonable opportunity to respond to extraneous

information that a district court intends to rely upon in imposing an upward

adjustment. *United States v. Fleming,* 894 F.3d 764 (6th Cir. 2018). In

*Fleming*, the defendant was convicted of a cocaine offense and his

Guidelines called for a 60 month sentence. At sentencing, the district court

doubled his sentence to 120 months in large part based on a local news article that described a recent surge in drug deaths mostly due to powerful opioids like fentanyl. *Fleming*, 894 F.3d at 766. However, neither the article or the state report on which it was based was disclosed to the parties prior to the sentencing hearing. *Id.*

At the beginning of the sentencing hearing, the district court provided the parties with a copy of the article, which primarily focused on overdoses due to opioids. *Id.* at 767. The article briefly mentioned cocaine. *Id.* All parties presented their arguments to the court requesting a 60 month Guidelines sentence. *Id.* The court then considered the 3553 factors and imposed a 120 month sentence based in large part on its concern in the increase in overdose deaths reflected in the article. *Id.* at 768. The court quoted extensively from the article and then concluded that based on Fleming's possession of the cocaine and the numerous drug deaths in this country a long prison sentence was appropriate. *Id.*

On appeal, Fleming argued his sentence was both procedurally and substantively unreasonable. *Id.* The Sixth Circuit concluded the district court's reliance on information about mixed cocaine-opioid overdose deaths

in the news article was a surprise, and that surprise was prejudicial to Fleming's sentencing presentation, thus rendering his sentence procedurally unreasonable. *Id.*

The Sixth Circuit noted there was no indication before the sentencing hearing that opioids were relevant to the case, let alone that they would play a prominent role. Fleming's conviction was for possession of cocaine, not opioids. There was nothing in the record suggesting that opioids were found in Fleming's possession, that he ever sold or possessed them, or that any cocaine he sold had been mixed with opioids. Thus, it was far from apparent opioids would be relevant at Fleming's sentencing.

The Sixth Circuit also noted that the "the weight the court ultimately assigned to [unexpected] considerations" may contribute to the surprise. *Fleming*, 894 F.3d at 769 citing *United States v. Coppenger*, 775 F.3d 799, 804-05 (6th Cir. 2015). The district court's consideration of statistics regarding mixed cocaine-opioid overdose deaths was not just made in passing; in the court's own telling, it was central to the decision to double Fleming's sentence. Consequently, Fleming was prejudiced by the surprise

because his counsel did not have a meaningful opportunity to contest the veracity or relevance of the information contained in the article.[4] *Id*. at 769.

Moreover, although the article was distributed to the parties at the start of the hearing, Fleming's counsel did not know for certain how the district court planned to use it until after counsel had already made his argument. The court's entire discussion of the issues raised in the article came after Fleming's argument and allocution were complete. By waiting until after Fleming's opportunity to speak had passed, the district court made it even more likely that Fleming would never address this key information on which the five-year upward variance was based. The Sixth Circuit noted that a sentencing hearing is meant to provide an opportunity for "full adversary testing of the issues relevant to a Guidelines sentence," but the way the hearing was conducted in Fleming's case ensured that meaningful adversarial testing would not occur. *Fleming*, 894 F.3d at 764 quoting *Burns*, 501 U.S. at 135.

---

[4]Fleming also alleged the article contained false and misleading statements. The Sixth Circuit noted it would not resolve those questions as they should be directed to the district court in the first instance. *Id.* at 769.

The Sixth Circuit recognized that while a district court must give notice before it can impose a departure, the same is not true for a variance under *Irizarry*, 553 U.S. at 708. However, the question posed in Fleming's case was whether a district court must provide notice of the specific issues it plans to consider in imposing a variance if those issues will come as a surprise to the parties. *Fleming*, 894F.3d at 770-71. Thus, *Irizarry* "left open the possibility of relief" where, as here, the district court's consideration of certain information came as a surprise, and that surprise prejudiced the defendant by preventing him from effectively addressing the information at sentencing.

On appeal, the government argued Fleming should have asked for a continuance once he realized the district court intended to rely on information he was not prepared to address. The Sixth Circuit noted that before the sentencing hearing, there was no indication that the article, the underlying state report, or the opioid crisis would be considered. There was also no indication that the report in question would deal largely with opioid overdose deaths, or that the district court planned to use that information to justify a five-year upward variance. The article was not mentioned again

until after the parties' arguments and Fleming's allocution had concluded, "by which point the train had left the station and the court was already rendering its sentence." *Fleming*, 894 F.3d at 771.

Finally, the Sixth Circuit concluded that Fleming established plain error. There was error which was obvious because the district court should have realized the article contained information that the parties might reasonably not have anticipated would be relevant. Moreover, the district court should have also been aware that the structure of the sentencing hearing—in which the parties were given the article only at the start of the hearing, the underlying state report was not provided at all, and the district court did not explain why the article was relevant until after the parties' arguments—would prevent Fleming from commenting on that information in a meaningful way. Fleming's substantial rights were affected because, had Fleming been given advance notice of the district court's intent to rely on the article, he might have been able to persuade the district court that the information in the article was unreliable or of limited relevance to his offense. Finally, the error "affected the fairness, integrity, or public reputation of the judicial proceedings" because Fleming was serving an

additional five years in prison based on potentially unreliable and extraneous information that was interjected into the proceedings in a way that ensured no meaningful adversarial testing. *Id.* at 771-72; *see also Coppenger*, 775 F.3d at 806 (finding plain error where the district court imposed an upward variance based on information in co-conspirators' presentence reports to which the defendant did not have access.)

In Mr. Molina's case, the district court relied on numerous undisclosed statistics from unknown sources that it did not provide to the parties prior to the sentencing hearing. Specifically, the district court relied on:

1.  There have been more than 300 mass shootings so far in 2022. [ER-31.]

2.  The July 4th Highland Park shooting left six people dead and dozens injured. This was one of 14 mass shootings that weekend. [ER-31.]

3.  There have been over 100 mass shootings since the rampage at a Texas elementary school that left 19 children and two teachers dead. [ER-31.]

4.  Mass shootings where four or more people, not including the shooter, are injured or killed, have averaged more than one per day this year. [ER-32.]

5.  Not a single week in 2022 has passed without at least four mass shootings. [ER-32.]

6.   More than 99% of gun deaths in the U.S. are from shootings other than mass shootings.  [ER-32.]

7.   These shootings are often committed by someone who is legally prohibited from possessing a firearm and perpetrated by someone who's displayed prior warning signs, intermingled with acts of domestic violence.  [ER-32.]

8.    Illegal possession of guns like the one in this case are part of the epidemic. [ER-32.]

9.   The Los Angeles police department has linked illegal guns to 24 killings since January.  [ER-32.]

10.  In 2020, California accounted for 65 percent of all ghost guns seized by the Bureau of Alcohol, Tobacco, and Firearms. [ER-32-33.]

11.  When people are afraid of gun related violence, this can have a negative impact on people's right to access schools and healthcare facilities.  [ER-33.]

Even more egregious than *Fleming*, here the district court never provided the statistics or their source to the parties.  Nor did the district court give any indication that it would be considering undisclosed evidence until it proceeded to its consideration of the 3553(a) factors.

The court's *sua sponte* decision to rely upon the article as a basis to impose an upward variance prejudiced Mr. Molina's right to due process. Without advance notice, counsel had no opportunity to conduct any review of the statistics or the undisclosed sources of the statistics.  Counsel was

-24-

denied the ability to challenge the accuracy or relevance of the undisclosed information.  Moreover, the procedure employed by the district court during the sentencing hearing effectively deprived the parties of any meaningful opportunity to debate the issues discussed in the article.  Here, the parties had concluded their arguments and the district court first discussed the undisclosed statistics while it was in the process of imposing its sentence.

The Supreme Court's decision in *Irizzary* serves as a protection of the defendant's due process rights by ensuring that he has ample notice and opportunity to address information that the district court intends to rely upon in support of an upward deviation from the applicable Guidelines range.  The failure to provide such reasonable notice materially prejudices the defendant's ability to adequately debate the legitimacy of the district court's variance determination.

In the present case, the following facts are not in dispute: the district court never provided the parties with the statistics it relied upon at sentencing; nor did the parties receive the sources of the information from which the statistics were derived; and the district court did not indicate its intention to impose an upward variance based upon the statistics until after

the parties' respective arguments had concluded. As a result of the foregoing circumstances, Mr. Molina was effectively denied any meaningful opportunity to contest the basis for the district court's decision to impose a sentence twice that recommended by the parties and 30 months in excess of the Guidelines range. *See Gray*, 905 F.3d at 1148 (finding Rule 32 violation where district court "relied on ... factual information that had not been disclosed to [defendant] and to which [defendant] had no opportunity to respond before [sic] sentence was imposed"); *Warr*, 530 F.3d at 1162–63 (finding Rule 32 violation where district court relied on a Bureau of Prisons' study when sentencing defendant without "notif[ying] [him] of it before the sentencing hearing"); *Gomez-Gomez*, 788 Fed.Appx. at 471 (the district court committed plain error when it relied on a 2005 sentencing transcript without notifying the parties beforehand.)

**B.    The district court erred and imposed a procedurally unreasonable sentence when it doubled Mr. Molina's sentence by varying 30 months above the applicable Guidelines range.**

   **1.    Standard of Review.**

The standard of review for allegations of procedural error in sentencing is abuse of discretion. *United States v. Ressam*, 679 F.3d 1069

(9th Cir. 2012). When a defendant fails to object on procedural grounds during the sentencing hearing, this Court reviews for plain error. *United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010). In establishing plain error, the appellant bears the burden of demonstrating (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc). The substantive reasonableness of a sentence—whether objected to or not at sentencing—is reviewed for abuse of discretion. *United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009)

A district court "necessarily abuses its sentencing discretion if it 'commit[s] [a] significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts . . .'" *Id.* at 579, *quoting Gall v. United States*, 552 U.S. 38, 51 (2007). After reviewing a district court's sentence for procedural reasonableness, the Court must then review the sentence to determine if it is substantively reasonable. *Id.* at 581. The Court must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*, *quoting Gall*, 552 U.S. at 51.

**2.    The district court's sentence was procedurally unreasonable.**

The due process right to be sentenced based on accurate information is not limited to information solely about the defendant's actions and criminal history. *Roberts v. United States*, 445 U.S. 552, 556 (1980) (due process requires that a defendant be sentenced on the basis of accurate information); *United States v. Brady*, 895 F.2d 538, 542 (9th Cir. 1990) (in the sentencing context, due process requires that a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the district court); *United States v. Alvarado-Martinez*, 556 F.3d 732, 735 (9th Cir. 2009) (per curiam).  Thus, a district court's sentence is procedurally unreasonable when it is predicated upon "clearly erroneous facts." *Gall*, 552 U.S. at 51.  This is because "a violation of due process exists when a sentencing judge relies upon erroneous information." *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

In order to prove that a sentence is procedurally unreasonable under this analysis, a defendant must establish the challenged information is (1) false or unreliable, and (2) demonstrably made the basis for the sentence," *United States v. Vanderwerfhorst*, 576 F.3d 929, 935–36 (9th Cir. 2009)

(quoting *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir. 1984)). To satisfy the first factor, the challenged information must be "objectively ascertainable error," *United States v. Addonizio*, 442 U.S. 178, 187 (1979). For the second factor, the court must have "made it abundantly clear that (the challenged information) was the basis for its sentence." *Farrow v. United States*, 580 F.2d 1339, 1359 (9th Cir. 1978).

To determine whether a district court relied upon erroneous information, this Court analyzes whether 'the sentence…might have been different in the absence of that information. *United States v. Tucker*, 404 U.S. 443, 448 (1972). Here, the statistics in question referenced mass shootings, homicides, illegal possession of firearms, illegal firearms, and ghost guns. This information was never provided to the parties. Moreover, the sources of this information were never provided to the parties at any time.

Even assuming, without conceding, that the information contained in the statistics are accurate, there is an insufficient nexus to this case to warrant any upward variance, let alone a sentence 30 months above the applicable Guidelines range. Here, the court's statistics focused on mass

shootings and homicides. However, Mr. Molina was convicted of felon in

possession of a firearm and ammunition, which is not a crime of violence.

*United States v. Sahakian*, 965 F.2d 740 (9th Cir. 1992). Mr. Molina did not

fire the gun at anyone, had not made any threats of violence to anyone, nor

did he have any mental health issues or signs of a crisis.[5] Thus, any

information regarding mass shootings and homicides is irrelevant.

     Despite the lack of relevance and/or reliability, the district court

relied upon these statistics to justify an upward variance of 30 months. The

court left no doubt about the impact of the statistics on its sentencing

decision, stating immediately after that the sentence that the most

important factor was protection of the public. [ER-33.] Because these

statistics and there underlying sources were never identified or provided to

the parties, the alleged information must be deemed unsubstantiated and/or

---

[5]

Off all mass shootings occurring between 1996 and 2020, there were a total of 14 Latino male shooters. Of all the Latino males who illegally possessed a gun and had a prior criminal record, which included a domestic violence conviction, there was one mass shooter. https://projects.voanews.com/mass-shootings/data.html. Mr. Molina would have presented information such as this to the district court had the district court's statistics and their sources been provided to him in advance of the sentencing hearing.

-30-

unreliable. There was simply no proof as to the accuracy or reliability of the undisclosed statistics and their sources that the district court referenced during the sentencing hearing. The record establishes that this undisclosed information served as the basis for the substantial upward variance that the district court imposed in this case. As such, the sentence is procedurally unreasonable and must be vacated.[6]

**C.  The district court's sentence was substantively unreasonable.**

To be substantively reasonable, a sentence must not be greater than necessary to fulfill the sentencing goals under 18 U.S.C. § 3553(a). *Ressam*, 679 F.3d at 1089 (vacating sentence as substantively unreasonable). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C § 3553(a)." *Id.* (citation omitted). "[S]uch review necessarily turns on the particulars of each case." *Id.* at 1087-88.

When reviewing an upward variance, this Court must ensure "the justification is sufficiently compelling to support the degree of the variance."

_____

[6]Mr. Molina also challenges the district court's imposition of an 18 month sentence upon revocation of his supervised release for the same reasons articulated in sections B. and C. supra.

*United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) citing *Gall*, 552 U.S. at 50.) The upward variance here is a major variance because it increased Mr. Molina's sentence by 30 months (100%) above the government's requested 30 month Guidelines sentence. Therefore, this "major departure should be supported by a more significant justification than a minor one." *Carty*, 520 F.3d at 991-992 (quoting *Gall*, 552 U.S. at 50).

One of the principal functions of the Sentencing Reform Act of 1984 was to eliminate "unwarranted sentenc[ing] disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). The statute effectuates this purpose by requiring district courts to fashion a sentence that avoids national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct. This provision is not concerned with disparities between one individual's sentence and another individual's sentence. Rather, § 3553(a)(6) is intended to ensure nationally uniform sentences among like offenders so as to leave room to depart downward for those defendants who are truly deserving of leniency. *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007)

A determination of whether a particular sentence creates an unwarranted sentencing disparity necessitates consideration of the applicable Guidelines range. Likewise, consideration of sentencing statistics also is necessary. *See, e.g.*, *United States v. Singh*, 877 F.3d 107, 116 (2d. Cir. 2017)(reversing above-Guidelines sentence that, "as shown by Sentencing Commission statistics," "drastically exceeded nationwide norms"); *United States v. Jenkins,* 854 F.3d 181 (2d Cir. 2017)(reversing within Guidelines sentence based on statistical review); *United States v. Stock*, 685 F.3d 621, 629-30 (6th Cir. 2012)(observing that sentence was "by far the longest" imposed for an offense such as the one at bar, and that this might affect the reasonableness of the sentence on remand); *United States v. Musgrave*, 647 Fed.Appx. 529, 538 (6th Cir. 2016) (upholding reasonableness of sentence against Government appeal where district court "studied sentencing statistics nationally and in the Southern District of Ohio"); *United States v. Buesing*, 615 F.3d 971, 974 (8th Cir. 2010) (affirming sentence that was arrived at in part through analysis of Sentencing Commission statistics).

To that end, avoiding unwarranted disparities demands that substantial variances from the recommended Guidelines range be supported by substantial reasons. *Id.* Nationwide sentencing statistics highlight the significant disparity between the sentence imposed in Mr. Molina's case and what other similarly-situated defendants have received. Specifically, the United States Sentencing Commission's Sourcebook indicated that of the 7607 defendants convicted nationwide in 2021 of firearms offenses in a criminal history category III, the median sentence imposed was only 32 months, and the mean sentence imposed was 38 months. *See* 2021 Sourcebook of Federal Sentencing Statistics available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2021/Table28. Based upon the foregoing statistical analysis, a sentence of 60 months constitutes a significant deviation from the nationwide median sentence imposed on similarly situated offenders.

In the instant case, the district court imposed a 30 month upward variance from Mr. Molina's Guidelines range, effectively doubling his sentence. This staggering increase in punishment is further clouded by the

-34-

fact that the Government and Probation both recommended a low end sentence of 30 months. Mr. Molina's prior criminal history and specific offense conduct were already accounted for by the applicable sentencing Guidelines. However, because of undisclosed statistics regarding mass shootings, homicides, and ghost guns, the district court determined that an unprecedented 30 month upward variance was warranted in this case. In addition to being highly questionable, if not outright improper, none of these factors are sufficient to justify the extent of the deviation exacted in this case.

**D.    The case should be reassigned for resentencing.**

Under 28 U.S.C. § 2106, this Court has the power to order reassignment of a case on remand. Mr. Molina requests sentencing before a different district court judge like the defendant in *In re Ellis*, 356 F.3d 1198 (9th Cir. 2004) (en banc). In *Ellis*, the appellant asked this Court to reassign the case to a different judge on remand. This Court identified two inquiries relating to reassignment. First, it examined whether the district judge had "exhibited personal bias requiring recusal from a case." Second, in the absence of personal bias, the court examined whether unusual

circumstances warranted reassignment. This Court stated that the second inquiry involved three factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected;
>
> (2) whether reassignment is advisable to preserve the appearance of justice; and
>
> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Ellis*, 356 F.3d at 1211. This Court noted that only one of the first two factors had to be present to support reassignment.

Reassignment is warranted in this case. Here, the record establishes the district court's firmly rooted beliefs regarding Mr. Molina's criminal history as well as the purported impact that firearm possession offenses have on the number of mass shootings and deaths in this country. The district court would have difficulty disregarding its previously expressed opinions in determining an appropriate sentence in this case.

Likewise, the remaining factors do not weigh against reassignment. In particular, the record in this case is not particularly voluminous.

Additionally, there are no contested objections regarding the calculated Guidelines range and the parties have a mere three month disputed disparity in what an appropriate sentence would be in this matter. Finally, resentencing by another judge would not entail waste and duplication out of proportion to the gain achieved in preserving an appearance of fairness, as a new sentencing hearing will be required whether the case is reassigned or remains with the current district judge. *United States v. Paul*, 561 F.3d 970, 975 (9th Cir. 2009).

## VIII.
## CONCLUSION

The district court sought to impose a sentence that significantly exceeded the applicable Guidelines range, which all parties and probation deemed to be appropriate under the circumstances. In order to justify its decision, the district court relied upon statistics of questionable validity. Equally troubling, however, is the manner in which the court elected to conduct the sentencing hearing. The district court failed to provide the parties with advance notice of its intention to vary upward from the applicable Guidelines range. Moreover, the district court failed to provide the parties with the opportunity to review and/or address the basis for its

decision. The district court denied Mr. Molina the opportunity to effectively litigate the issues.

The Constitution, the statutory rules and case law, all establish that a defendant is entitled a fair sentencing proceeding. If the concepts of "due process" and fundamental fairness are to have any significant import, they must not only ensure that an above-Guidelines sentence is predicated upon relevant and reliable factors, but also that defendants receive a reasonable opportunity to prepare for and respond to the basis for the district court's decision. Because the sentence was procedurally and substantively unreasonable, it must be vacated, remanded, and reassigned for a new sentencing hearing.

Respectfully submitted,

Dated: January 30, 2023    s/Marisa L. D. Conroy
             Marisa L. D. Conroy
             Counsel for Appellant
             Elvis Edgardo Molina

**CERTIFICATE OF RELATED CASES**

Counsel for the Appellant is unaware of any other related cases

pending before this Court which should be considered in this appeal.


Date: January 30, 2023                    s/ Marisa L. D. Conroy
                                          MARISA L. D. CONROY
                                          Attorney for Defendant-Appellant
                                          Elvis Edgardo Molina

**Certificate of Compliance Pursuant to Fed. R. App. 32(A)(7)(c) and
Circuit Rule 32-1 for Case Numbers 22-50161, 22-50162**

I certify that:  (check appropriate options(s))

X  1. Pursuant to Fed. R. App. P. 32(a)(7)(c) and Ninth Circuit Rule
32-1, the attached opening/~~answering/reply/cross~~ appeal brief is

✕    Proportionately spaced, has a typeface of 14 points or more and
contains <u>7324</u> words (opening, answering, and the second and
third briefs filed in cross-appeals must NOT exceed 14,000
words; reply briefs must NOT exceed 7,000 words),

or is

❏    Monospaced, have 10.5 or fewer characters per inch and contain
_____ words or _____ lines of text (opening, answering, and
second and third briefs filed in cross-appeals must NOT exceed
14,000 words, or 1,300 lines of text; reply briefs must NOT
exceed 7,000 words or 650 lines of text).

Date: January 30, 2023            <u>s/ Marisa L. D. Conroy</u>
                                  MARISA L. D. CONROY
                                  Attorney for Defendant-Appellant
                                  Elvis Edgardo Molina

-40-

# APPENDIX

---

United States Code Annotated
    Federal Rules of Criminal Procedure for the United States District Courts (Refs & Annos)
        Title VII. Post-Conviction Procedures

Federal Rules of Criminal Procedure, Rule 32

Rule 32. Sentencing and Judgment

Currentness

**(a) [Reserved.]**

**(b) Time of Sentencing.**

    **(1) In General.** The court must impose sentence without unnecessary delay.

    **(2) Changing Time Limits.** The court may, for good cause, change any time limits prescribed in this rule.

**(c) Presentence Investigation.**

    **(1) Required Investigation.**

        **(A) In General.** The probation officer must conduct a presentence investigation and submit a report to the court before it imposes sentence unless:

            **(i)** 18 U.S.C. § 3593(c) or another statute requires otherwise; or

            **(ii)** the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record.

        **(B) Restitution.** If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution.

    **(2) Interviewing the Defendant.** The probation officer who interviews a defendant as part of a presentence investigation must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview.

**(d) Presentence Report.**

    **(1) Applying the Advisory Sentencing Guidelines.** The presentence report must:

---

**(A)** identify all applicable guidelines and policy statements of the Sentencing Commission;

**(B)** calculate the defendant's offense level and criminal history category;

**(C)** state the resulting sentencing range and kinds of sentences available;

**(D)** identify any factor relevant to:

    **(i)** the appropriate kind of sentence, or

    **(ii)** the appropriate sentence within the applicable sentencing range; and

**(E)** identify any basis for departing from the applicable sentencing range.

**(2) Additional Information**. The presentence report must also contain the following:

**(A)** the defendant's history and characteristics, including:

    **(i)** any prior criminal record;

    **(ii)** the defendant's financial condition; and

    **(iii)** any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

**(B)** information that assesses any financial, social, psychological, and medical impact on any victim;

**(C)** when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

**(D)** when the law provides for restitution, information sufficient for a restitution order;

**(E)** if the court orders a study under 18 U.S.C. § 3552(b), any resulting report and recommendation;

**(F)** a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

**(G)** any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

**(3) Exclusions.** The presentence report must exclude the following:

**(A)** any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program;

**(B)** any sources of information obtained upon a promise of confidentiality; and

**(C)** any other information that, if disclosed, might result in physical or other harm to the defendant or others.

**(e) Disclosing the Report and Recommendation.**

**(1) Time to Disclose.** Unless the defendant has consented in writing, the probation officer must not submit a presentence report to the court or disclose its contents to anyone until the defendant has pleaded guilty or nolo contendere, or has been found guilty.

**(2) Minimum Required Notice.** The probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period.

**(3) Sentence Recommendation.** By local rule or by order in a case, the court may direct the probation officer not to disclose to anyone other than the court the officer's recommendation on the sentence.

**(f) Objecting to the Report.**

**(1) Time to Object.** Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report.

**(2) Serving Objections.** An objecting party must provide a copy of its objections to the opposing party and to the probation officer.

**(3) Action on Objections.** After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate.

**(g) Submitting the Report.** At least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them.

**(h) Notice of Possible Departure from Sentencing Guidelines.** Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

**(i) Sentencing.**

**(1) In General.** At sentencing, the court:

**(A)** must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report;

**(B)** must give to the defendant and an attorney for the government a written summary of--or summarize in camera--any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information;

**(C)** must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence; and

**(D)** may, for good cause, allow a party to make a new objection at any time before sentence is imposed.

**(2) Introducing Evidence; Producing a Statement.** The court may permit the parties to introduce evidence on the objections. If a witness testifies at sentencing, Rule 26.2(a)-(d) and (f) applies. If a party fails to comply with a Rule 26.2 order to produce a witness's statement, the court must not consider that witness's testimony.

**(3) Court Determinations.** At sentencing, the court:

**(A)** may accept any undisputed portion of the presentence report as a finding of fact;

**(B)** must--for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and

**(C)** must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.

**(4) Opportunity to Speak.**

**(A) By a Party.** Before imposing sentence, the court must:

**(i)** provide the defendant's attorney an opportunity to speak on the defendant's behalf;

**(ii)** address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and

**(iii)** provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

**(B) By a Victim.** Before imposing sentence, the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard.

**(C) In Camera Proceedings.** Upon a party's motion and for good cause, the court may hear in camera any statement made under Rule 32(i)(4).

**(j) Defendant's Right to Appeal.**

**(1) Advice of a Right to Appeal.**

**(A) Appealing a Conviction.** If the defendant pleaded not guilty and was convicted, after sentencing the court must advise the defendant of the right to appeal the conviction.

**(B) Appealing a Sentence.** After sentencing--regardless of the defendant's plea--the court must advise the defendant of any right to appeal the sentence.

**(C) Appeal Costs.** The court must advise a defendant who is unable to pay appeal costs of the right to ask for permission to appeal in forma pauperis.

**(2) Clerk's Filing of Notice.** If the defendant so requests, the clerk must immediately prepare and file a notice of appeal on the defendant's behalf.

**(k) Judgment.**

**(1) In General.** In the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence. If the defendant is found not guilty or is otherwise entitled to be discharged, the court must so order. The judge must sign the judgment, and the clerk must enter it.

**(2) Criminal Forfeiture.** Forfeiture procedures are governed by Rule 32.2.

**CREDIT(S)**

(As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 24, 1972, eff. Oct. 1, 1972; Apr. 22, 1974, eff. Dec. 1, 1975; July 31, 1975, Pub.L. 94-64, § 3(31)-(34), 89 Stat. 376; Apr. 30, 1979, eff. Aug. 1, 1979, Dec. 1, 1980; Oct. 12, 1982, Pub.L. 97-291, § 3, 96 Stat. 1249; Apr. 28, 1983, eff. Aug. 1, 1983; Oct. 12, 1984, Pub.L. 98-473, Title II, § 215(a), 98 Stat. 2014; Nov. 10, 1986, Pub.L. 99-646, § 25(a), 100 Stat. 3597; Mar. 9, 1987, eff. Aug. 1, 1987; Apr. 25, 1989, eff. Dec. 1, 1989; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 1994, eff. Dec. 1, 1994; Sept. 13, 1994, Pub.L. 103-322, Title XXIII, § 230101(b), 108 Stat. 2078; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 24, 1996, Pub.L. 104-132, Title II, § 207(a), 110 Stat. 1236; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 26, 2011, eff. Dec. 1, 2011.)

Fed. Rules Cr. Proc. Rule 32, 18 U.S.C.A., FRCRP Rule 32
Including Amendments Received Through 1-1-23

**End of Document**　　　© 2023 Thomson Reuters. No claim to original U.S. Government Works.

47

United States Code Annotated
    Federal Rules of Criminal Procedure for the United States District Courts (Refs & Annos)
        Title VII. Post-Conviction Procedures

Federal Rules of Criminal Procedure, Rule 32.1

Rule 32.1 Revoking or Modifying Probation or Supervised Release

Currentness

**(a) Initial Appearance.**

**(1) Person in Custody.** A person held in custody for violating probation or supervised release must be taken without unnecessary delay before a magistrate judge.

**(A)** If the person is held in custody in the district where an alleged violation occurred, the initial appearance must be in that district.

**(B)** If the person is held in custody in a district other than where an alleged violation occurred, the initial appearance must be in that district, or in an adjacent district if the appearance can occur more promptly there.

**(2) Upon a Summons.** When a person appears in response to a summons for violating probation or supervised release, a magistrate judge must proceed under this rule.

**(3) Advice.** The judge must inform the person of the following:

**(A)** the alleged violation of probation or supervised release;

**(B)** the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and

**(C)** the person's right, if held in custody, to a preliminary hearing under Rule 32.1(b)(1).

**(4) Appearance in the District With Jurisdiction.** If the person is arrested or appears in the district that has jurisdiction to conduct a revocation hearing--either originally or by transfer of jurisdiction--the court must proceed under Rule 32.1(b)-(e).

**(5) Appearance in a District Lacking Jurisdiction.** If the person is arrested or appears in a district that does not have jurisdiction to conduct a revocation hearing, the magistrate judge must:

**(A)** if the alleged violation occurred in the district of arrest, conduct a preliminary hearing under Rule 32.1(b) and either:

(i) transfer the person to the district that has jurisdiction, if the judge finds probable cause to believe that a violation occurred; or

(ii) dismiss the proceedings and so notify the court that has jurisdiction, if the judge finds no probable cause to believe that a violation occurred; or

(B) if the alleged violation did not occur in the district of arrest, transfer the person to the district that has jurisdiction if:

(i) the government produces certified copies of the judgment, warrant, and warrant application, or produces copies of those certified documents by reliable electronic means; and

(ii) the judge finds that the person is the same person named in the warrant.

(6) **Release or Detention.** The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings. The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person.

(b) **Revocation.**

(1) **Preliminary Hearing.**

(A) **In General.** If a person is in custody for violating a condition of probation or supervised release, a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred. The person may waive the hearing.

(B) **Requirements.** The hearing must be recorded by a court reporter or by a suitable recording device. The judge must give the person:

(i) notice of the hearing and its purpose, the alleged violation, and the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel;

(ii) an opportunity to appear at the hearing and present evidence; and

(iii) upon request, an opportunity to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear.

(C) **Referral.** If the judge finds probable cause, the judge must conduct a revocation hearing. If the judge does not find probable cause, the judge must dismiss the proceeding.

**(2) Revocation Hearing.** Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:

**(A)** written notice of the alleged violation;

**(B)** disclosure of the evidence against the person;

**(C)** an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;

**(D)** notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and

**(E)** an opportunity to make a statement and present any information in mitigation.

**(c) Modification.**

**(1) In General.** Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation.

**(2) Exceptions.** A hearing is not required if:

**(A)** the person waives the hearing; or

**(B)** the relief sought is favorable to the person and does not extend the term of probation or of supervised release; and

**(C)** an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so.

**(d) Disposition of the Case.** The court's disposition of the case is governed by 18 U.S.C. § 3563 and § 3565 (probation) and § 3583 (supervised release).

**(e) Producing a Statement.** Rule 26.2(a)-(d) and (f) applies at a hearing under this rule. If a party fails to comply with a Rule 26.2 order to produce a witness's statement, the court must not consider that witness's testimony.

**CREDIT(S)**

(Added Apr. 30, 1979, eff. Dec. 1, 1980; amended Nov. 10, 1986, Pub.L. 99-646, § 12(b), 100 Stat. 3594; Mar. 9, 1987, eff. Aug. 1, 1987; Apr. 25, 1989, eff. Dec. 1, 1989; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 28, 2010, eff. Dec. 1, 2010.)

Fed. Rules Cr. Proc. Rule 32.1, 18 U.S.C.A., FRCRP Rule 32.1

Including Amendments Received Through 1-1-23

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part II. Criminal Procedure
      Chapter 227. Sentences (Refs & Annos)
        Subchapter A. General Provisions (Refs & Annos)

18 U.S.C.A. § 3553

§ 3553. Imposition of a sentence

Effective: December 21, 2018
Currentness

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

**(b) Application of guidelines in imposing a sentence.--**

**(1) In general.**--Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

**(2) Child crimes and sexual offenses.--**

**(A)** [2] **Sentencing.**--In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless--

**(i)** the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

**(ii)** the court finds that there exists a mitigating circumstance of a kind or to a degree, that--

**(I)** has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

**(II)** has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

**(III)** should result in a sentence different from that described; or

**(iii)** the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

**(c) Statement of reasons for imposing a sentence.**--The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--

**(1)** is of the kind, and within the range, described in subsection (a)(4), and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

**(2)** is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form issued under section 994(w)(1)(B) of title 28, except to the extent that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32. In the event that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements.

If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor. The court shall provide a transcription or other appropriate public record of the court's statement of reasons, together with the

order of judgment and commitment, to the Probation System and to the Sentencing Commission,,[3] and, if the sentence includes a term of imprisonment, to the Bureau of Prisons.

**(d) Presentence procedure for an order of notice**.--Prior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order. Upon motion of the defendant or the Government, or on its own motion, the court shall--

**(1)** permit the defendant and the Government to submit affidavits and written memoranda addressing matters relevant to the imposition of such an order;

**(2)** afford counsel an opportunity in open court to address orally the appropriateness of the imposition of such an order; and

**(3)** include in its statement of reasons pursuant to subsection (c) specific reasons underlying its determinations regarding the nature of such an order.

Upon motion of the defendant or the Government, or on its own motion, the court may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process.

**(e) Limited authority to impose a sentence below a statutory minimum.**--Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

**(f) Limitation on applicability of statutory minimums in certain cases.**--Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846), section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), or section 70503 or 70506 of title 46, the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that--

**(1)** the defendant does not have--

**(A)** more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

**(B)** a prior 3-point offense, as determined under the sentencing guidelines; and

**(C)** a prior 2-point violent offense, as determined under the sentencing guidelines;

**(2)** the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

**(3)** the offense did not result in death or serious bodily injury to any person;

**(4)** the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

**(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

**(g) Definition of violent offense.**--As used in this section, the term "violent offense" means a crime of violence, as defined in section 16, that is punishable by imprisonment.

## CREDIT(S)

(Added Pub.L. 98-473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1989; amended Pub.L. 99-570, Title I, § 1007(a), Oct. 27, 1986, 100 Stat. 3207-7; Pub.L. 99-646, §§ 8(a), 9(a), 80(a), 81(a), Nov. 10, 1986, 100 Stat. 3593, 3619; Pub.L. 100-182, §§ 3, 16(a), 17, Dec. 7, 1987, 101 Stat. 1266, 1269, 1270; Pub.L. 100-690, Title VII, § 7102, Nov. 18, 1988, 102 Stat. 4416; Pub.L. 103-322, Title VIII, § 80001(a), Title XXVIII, § 280001, Sept. 13, 1994, 108 Stat. 1985, 2095; Pub.L. 104-294, Title VI, § 601(b)(5), (6), (h), Oct. 11, 1996, 110 Stat. 3499, 3500; Pub.L. 107-273, Div. B, Title IV, § 4002(a)(8), Nov. 2, 2002, 116 Stat. 1807; Pub.L. 108-21, Title IV, § 401(a), (c), (j)(5), Apr. 30, 2003, 117 Stat. 667, 669, 673; Pub.L. 111-174, § 4, May 27, 2010, 124 Stat. 1216; Pub.L. 115-391, Title IV, § 402(a), Dec. 21, 2018, 132 Stat. 5221.)

## Footnotes

1       So in original. The period probably should be a semicolon.

2       So in original. No subpar. (B) has been enacted.

3       So in original. The second comma probably should not appear.

18 U.S.C.A. § 3553, 18 USCA § 3553
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.